United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Marissa C. Nowak, Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 24-24316-Civ-Scola |
| Carnival Corporation, d/b/a | ) | |
| Carnival Cruise Lines, Defendant. | ) | |
| | ) | |

## Order on Motion to Dismiss

This cause comes before the Court upon the Defendant's motion to dismiss the complaint. (ECF No. 8.) The Plaintiff has filed a response (ECF No. 10), and the Defendant has filed a reply (ECF No. 15). The Court has considered the briefing, the record, the relevant legal authorities, and is otherwise fully advised. For the reasons that follow, the Court **grants in part** and **denies in part** the Defendant's motion to dismiss. (**ECF No. 8**.)

### 1. Background

The Plaintiff, Marissa C. Nowak, was traveling on the Defendant (Carnival Corporation)'s cruise the *Miracle* on November 11, 2023, when she slipped and fell down a flight of stairs. (Compl., ECF No. 1, ¶¶ 7, 17.) The Plaintiff's left foot became trapped in the stairs, resulting in a severe injury to her left foot that required surgery. (*Id.* ¶¶ 17-18.) The Plaintiff alleges that she "was wearing appropriate footwear, holding onto the railing with her right hand, and was moving carefully and at an appropriate pace" while on the stairs. (*Id.* ¶ 8.)

The Plaintiff believes that four dangerous conditions contributed to her fall. First, "the staircase was not uniform in its dimensions, such that the width, height, depth, and angles of the steps varied throughout the staircase." (*Id.* ¶ 9.) Second, as the stairs curved to the right, the inside tread of each step "narrowed subtly and without warning such that a reasonable person in Plaintiff's position could not visually appreciate this subtle change with the ordinary use of their senses." (*Id.* ¶ 10.) Thus, the space where the Plaintiff could place her feet "became progressively smaller." (*Id.*) Third, the stairs were unreasonably slippery because their skid-resistant strips had become worn out. (*Id.* ¶ 11.) Fourth, the area between each stair was open "such that a user's foot could easily become trapped between each step during a fall." (*Id.* ¶ 12.) According to the Plaintiff, these conditions resulted in the stairs

becoming unreasonably dangerous, but not in an open and obvious way. (*Id.* ¶ 13.)

The Plaintiff alleges that the Defendant knew, or should have known, about the dangerous condition of the staircase, but failed to act and warn the Plaintiff. (*Id.* ¶¶ 17-29.) But for the Defendant's actions (and inactions), the Plaintiff believes she would not have been injured. (*Id.* ¶¶ 30-31.)

The Plaintiff brings three counts of negligence against the Defendant: general negligence (Count I), negligent failure to maintain (Count II), and negligent failure to warn (Count III). (*Id.* 7-13.) The Defendant brings this motion to dismiss, seeking to dismiss Counts I and II, and parts of Count III. (*See generally* Def.'s Mot.)

## 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. Discussion

For the reasons discussed below, the Court dismisses Count I without prejudice, but specific parts of Counts I, II, and III with prejudice to the extent they are negligent mode of operation claims. The Court does not, however, dismiss Count II in full.

### A. Whether Count I is a Shotgun Pleading

The Defendant believes that Count I is a shotgun pleading because it "alleges nine separate ways in which Carnival allegedly breached its duty of care, with some of these theories of liability being redundant . . . ." (Def.'s Mot., at 3.) The Plaintiff does not believe that Count I is a shotgun pleading because she has "pled distinct claims" and has "provided Carnival with adequate notice

of her claims and the grounds upon which each claim rests." (Pl.'s Resp., at 4.)

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings" because not only do they violate Fed. R. Civ. P. 8(a)(2) and 10(b), but also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Wheeler v. Carnival Corp.*, Civil Action No. 20-20859-Civ-Scola, 2020 WL 977935, at *4 (S.D. Fla. Feb. 28, 2020) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2019)). "One type of shotgun pleading is where a complaint fails to 'separate into a different count each cause of action or claim for relief.'" *Id.* (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 n.13 (11th Cir. 2015)).

Count I of the Plaintiff's complaint falls into this category of shotgun pleading because it "attempts to cram multiple, distinct theories of liability into one claim." *Id.* The Court will not go through all examples, but Count I alleges various distinct theories negligence, ranging from the Defendant "[f]ailing to provide a safe, properly maintained staircase," to "failing to follow its own internal operating procedures regarding review and maintenance of the staircases on the vessel," to "[f]ail[ing] to train its crew in risk assessment and safe practices[.]" (*Id.* ¶¶ (a), (e), (i).) "Each distinct theory, however, is a separate cause of action that must be asserted independently and with corresponding factual allegations" that are likely to be unique to one another. *Id.*; *id.* n.1.

The Plaintiff's rationale for such a broad pleading is exactly why courts in the Eleventh Circuit are loathe to allow shotgun pleadings. Count I specifically alleging that the Defendant negligently failed to train its employees. (Compl. ¶¶ 38 (g.); (i.)). The Plaintiff argues that though "she is not asserting such a claim at this time," "these allegations are relevant to and delineate the scope of discovery Plaintiff will seek[.]" (Pl.'s Resp., at 8.) But allowing the Plaintiff to include such allegations in a broad negligence count in the hopes that discovery reveals facts to support the claim would improperly and "inexorably broaden the scope of discovery." *Wheeler*, 2020 WL 977935, at *4 (quoting *Vibe Micro, Inc.*, 878 F.3d at 1295). This Court was faced with a similar situation in *Gayou v. Celebrity Cruises, Inc.*, No. 11–23359–Civ, 2012 WL 2049431 (S.D. Fla. June 5, 2012), where the plaintiff's response to a motion to dismiss focused exclusively on a failure to warn claim, though the broad allegations "potentially implicate[d] negligent hiring or retention." 2012 WL 2049431, at *5 n.2. The Court instructed the Plaintiff that such allegations had to be independently re-pled with facts supporting each theory of negligence. *Id.* Similarly, if the Plaintiff here wants to make allegations based on various

instances of negligence—including failure to train[1]—she must do so in separate counts with adequate factual allegations, rather than in one count that seeks to improperly broaden the parameters of discovery. *See Wheeler*, 2020 WL 977935.

Count I is a shotgun pleading and is therefore dismissed without prejudice.

**B. Whether Counts I, II, and III Allege Negligent Mode of Operation**

The Defendant also seeks dismissal of Counts I, II, and III "to the extent that they contain a claim for negligent mode of operation, which is not recognized under federal maritime law." (Def.'s Mot., at 6 (citing *Malley v. Royal Caribbean Cruises, Ltd.*, 713 F. App'x 905, 910 (11th Cir. 2017)).) Specifically, the Defendant seeks dismissal of the following allegations:

- As to Count I: "Failing to follow its own internal operating procedures regarding review and maintenance of the staircases on the vessel" and "failing to promulgate and adopt policies, procedures, and timeliness for the orderly and safe application of staircase inspection and maintenance;"
- As to Count II: "Failing to follow its own internal operating procedures regarding review and maintenance of the staircases on the vessel."
- As to Count III: "Failing to promulgate and/or enforce adequate policies and procedures to ensure that passengers like the Plaintiff are warned of the danger posed by the shipboard staircases."

(Compl., ¶¶ 38(e.)(h.), 47(b.), 56(f.).)

In *Youngman v. Royal Caribbean Cruises Ltd.*, Case No. 23-cv-21796-BLOOM/Otazo-Reyes, 2023 WL 5206036 (S.D. Fla. Aug. 14, 2023), Judge Bloom summarized the law on negligent mode of operation:

'The basis for the negligent mode of operation theory is the claim that the specific mode of operation selected by the premises owner or operator resulted in the creation of a dangerous or unsafe condition.' *Cacciamani v. Target Corp.*, 622 F. App'x 800, 804 (11th Cir. 2015) (quoting

---

[1] The Defendant separately seeks dismissal of the negligent training claim in Count I. (Def.'s Mot., I.A.) Because the Court dismisses Count I without prejudice in its entirety for the Plaintiff to replead with the requisite specificity, the Court need not address this argument separately at this time.

*Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 260 (Fla. 2002)). This theory of liability 'looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident.' *Id.* (quotation marks omitted). According to the Eleventh Circuit, such a theory of negligence is 'at odds with admiralty law's requirement that a cruise ship must have notice of the dangerous condition.' *Malley*, 713 F. App'x at 910 (citing *Keefe*, 867 F.2d at 1322).

*Youngman*, 2023 WL 5206036, at *2. The Plaintiff says that she is not bringing a negligent mode of operation claim and that the Defendant's isolated references to the above paragraphs in the complaint "are not enough to transform all of the claims into an impermissible claim for negligent mode of operation." (Pl.'s Resp., at 10.)

The issue for the Plaintiff, however, is that she specifically alleges that the Defendant breached its duties and is liable to the Plaintiff for, as examples, "[f]ailing to follow its own internal operating procedures" and "[f]ailing to promulgate and/or enforce adequate policies and procedures . . . ." (Compl. ¶¶ 47(c.), 56(f.).) Thus, the Court must determine whether the Plaintiff may hold the Defendant liable for these specific breaches.

She cannot. Courts in this circuit, and this district specifically, have found allegations describing a failure to create or follow adequate policies and procedures do not relate to the specific circumstances of a plaintiff's injury and are instead allegations of negligent mode of operation not recognized in the Eleventh Circuit. *See, e.g.*, *Youngman*, 2023 WL 5206036, at *2 (dismissing a claim that "s[ought] to hold Defendant liable 'with respect to its policies and procedures' relating to mobility-impaired passengers in general" because it was a negligent mode of operation claim); *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1297 (S.D. Fla. 2021) (Moore, J.) ("Plaintiff's claim that Carnival's procedures for maintaining door stoppers constitutes negligent maintenance, negligent failure to train, or negligent supervision is essentially an attempt to hold Carnival liable for having a negligent mode of operation . . . However, it is well settled that general maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations." (citing *Malley*, 713 F. App'x at 910)).

The same goes for the at-issue allegations here—they seek to hold the Defendant liable for negligent modes of operation. Those are not cognizable claims in the Eleventh Circuit.

The Plaintiff's arguments to the contrary are unavailing. The Plaintiff believes that "the theory that a cruise operator in failing to follow its own policies and procedures, which caused or contributed to the plaintiff's injury, is

a viable claim." (*Id.* at 10 (citing *Green v. Carnival Corp.*, 614 F. Supp. 3d 1257, 1268-69 (S.D. Fla. 2022) (Bloom, J.)). However, the issue in *Green* was not whether the plaintiff was bringing a negligent mode of operation claim, but rather whether the plaintiff's complaint was a shotgun pleading. *See Green*, 614 F. Supp. 3d at 1268-69.

The Plaintiff also argues that she "specifically alleged factual material that would establish notice." (Pl.'s Resp., at 10.) The Plaintiff perhaps makes this argument because the rationale behind the prohibition against negligent mode of operation claims is that direct liability for negligence in maritime must be premised on notice of the dangerous condition. *See Youngman*, 2023 WL 5206036, at *2. However, whether the Plaintiff alleges notice does not alter the nature of the at-issue allegations. In any event, the Plaintiff's theory of notice as it pertains to the Defendant's policies and procedures are that because the Defendant had "developed policies and procedures that govern the inspection, maintenance, and repair of staircases," (Compl. ¶ 23), the Defendant knew, or should have known, "about the specific hazardous conditions at issue." (Pl.'s Resp., at 10-11 (citing Compl. ¶¶ 19, 23).) This is the exact type of negligent mode of operation claim foreclosed by the Eleventh Circuit because "[w]hile evidence of Defendant's practices in preventing such conditions may be relevant to establishing Plaintiff's negligence claim, maritime law does not support a stand-alone claim based on Defendant's 'mode of operation' unconnected to Plaintiff's specific accident." *Stewart-Patterson v. Celebrity Cruises, Inc.*, No12-20902-CIV, 2012 WL 2979032, at *3 (S.D. Fla. July 20, 2012) (Cohn, J.).

Thus, to the extent that the Plaintiff seeks to hold the Defendant liable for the alleged breaches described in paragraphs 38(e.)(h.), 47(b.), and 56(f.), it may not do so. Any negligence claim based solely on those allegations is dismissed with prejudice. Such allegations, however, may still be relevant in proving the Plaintiff's valid claims of negligence. *See id.*

## C. Whether Count II is Duplicative of Count I

The Defendant also believes that Count II should be dismissed as duplicative because like Count I, Count II "seeks to hold Carnival liable based on its alleged negligence in inspecting and maintaining the area (staircase) in which Plaintiff was injured." (Def.'s Mot., at 7-8.) The Plaintiff pushes back, arguing that "[w]hile the allegations of Count II overlap with those of Count I, the general negligence claim also presents totally distinct allegations intended to assert a claim for negligence that does not overlap with Count II." (Pl.'s

Resp., at 12.)

Because the Court has dismissed Count I as a shotgun pleading and the Plaintiff is given the opportunity to amend, the Court will not dismiss Count II as duplicative of Count I. Should the Defendant believe Count II is still improperly duplicative of Count I after the Plaintiff amends her complaint, the Defendant can raise this argument again at that time.

### 4. Conclusion

For the foregoing reasons, the Court **grants in part** and **denies in part** the Defendant's motion to dismiss. (**ECF No. 8**.) The Plaintiff will have twenty-one days from entry of this Order to amend her complaint consistent with this Order.

**Done and ordered** in Miami, Florida, on January 9, 2025.

Robert N. Scola, Jr.
United States District Judge